MIN: <span style="color:red">Redacted</span>

Loan Number

# ADJUSTABLE RATE NOTE
## (LIBOR Six-Month Index (As Published In *The Wall Street Journal*)-Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

MARCH 29, 2006                    SEAL BEACH                    CALIFORNIA
[Date]                                 [City]                              [State]

18101 RIVIERA DRIVE, BLYTHE, CALIFORNIA 92225
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 252,000.00    (this amount is called "Principal"), plus interest, to the order of Lender. Lender is ALLSTATE HOME LOANS, INC. DBA ALLSTATE FUNDING, A CALIFORNIA CORPORATION (CFL\DRE # 01147766)    .
I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    7.000 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the 1st    day of each month beginning on    JUNE 1    , 2006 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on MAY 1, 2036    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 3030 OLD RANCH PARKWAY SUITE 270, SEAL BEACH, CALIFORNIA 90740

or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 1,676.56    . This amount may change. ** See attached Interest Only Note Addendum.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)--Single Family
Fannie Mae MODIFIED INSTRUMENT          Page 1 of 5

Form 3520 1/01
*DocMagic* eForms  800-649-1362
*www.docmagic.com*

Page 15

Exhibit 1

Us3520.not-a


## 4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The interest rate I will pay may change on the 1st  day of  MAY, 2011                    , and on that day every  6th   month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding    TWO AND 375/1000                         percentage points (       2.375 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than       10.000 % or less than      7.000  %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than  ONE AND 000/1000                    percentage point(s) (       1.000%) from the rate of interest I have been paying for the preceding  6    months. My interest rate will never be greater than       12.000 %. My interest rate will never be less than       2.375%.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5.    BORROWER'S RIGHT TO PREPAY  ** See attached Prepayment Note Addendum.

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX                                                   Form 3520 1/01
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)--Single Family                              *DocMagic* 800-649-1362
Fannie Mae MODIFIED INSTRUMENT                          Page 2 of 5                              *www.docmagic.com*

Exhibit 1

Us3520.not.2.tem

## 6.    LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7.    BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of     15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be     5.000     % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8.    GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9.    OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10.   WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX                                    Form 3520 1/01
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)--Single Family            DocMagic *eForms* 800-649-1362
Fannie Mae MODIFIED INSTRUMENT                   Page 3 of 5                    *www.docmagic.com*

Page 17

Exhibit 1

Us3520.not.3.tem

## 11.  UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions.  In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note.  That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note.  Some of those conditions read as follows:

>  **Transfer of the Property or a Beneficial Interest in Borrower.**  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

>  If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.    Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

>  To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption.  Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument.  Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

>  If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX                                    Form 3520 1/01
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)--Single Family                      **DocMagic** *eForms* 800-649-1362
Fannie Mae MODIFIED INSTRUMENT                    Page 4 of 5                              *www.docmagic.com*

Page 18

# Exhibit 1

Us3520.not.4.tem

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.


_____ (Seal)        _____ (Seal)
KENNETH  FLANAGAN           -Borrower                                   -Borrower


_____ (Seal)        _____ (Seal)
                            -Borrower                                   -Borrower


_____ (Seal)        _____ (Seal)
                            -Borrower                                   -Borrower


PAY TO THE ORDER OF:


WITHOUT RECOURSE
ALLSTATE HOME LOANS, INC.
DBA: ALLSTATE FUNDING
BY:
JEFF SMITH – VICE PRESIDENT


*[Sign Original Only]*


MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)--Single Family
Fannie Mae MODIFIED INSTRUMENT                    Page 5 of 5

Form 3520 1/01
DocMagic *eForms* 800-649-1362
www.docmagic.com

Page 19

Us3520.not.5.tem

**Exhibit 1**

# INTEREST-ONLY ADDENDUM
# TO ADJUSTABLE RATE PROMISSORY NOTE

Loan Number

Property Address: 18101 RIVIERA DRIVE, BLYTHE, CALIFORNIA 92225

**THIS ADDENDUM** is made this 29th day of MARCH 2006 , and is incorporated into and intended to form a part of the Adjustable Rate Note (the "Note") dated the same date as this Addendum executed by the undersigned and payable to ALLSTATE HOME LOANS, INC. DBA ALLSTATE FUNDING, A CALIFORNIA CORPORATION (the Lender).

**THIS ADDENDUM** supersedes Sections 3(A), 3(B), 4(C) and 7(A) of the Note. None of the other provisions of the Note are changed by this Addendum.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay interest by making payments every month for the first 120 payments (the "Interest-Only Period") in the amount sufficient to pay interest as it accrues. I will pay principal and interest by making payments every month thereafter for the next 240 payments in an amount sufficient to fully amortize the outstanding principal balance of the Note at the end of the Interest-Only Period over the remaining term of the Note in equal monthly payments.

I will make my monthly payments on the first day of each month beginning on JUNE 1, 2006 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before principal. If, on MAY 1, 2036 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my payments at 3030 OLD RANCH PARKWAY SUITE 270, SEAL BEACH, CALIFORNIA 90740 , or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $ 1,470.00 . This payment amount is based on the original principal balance of the Note. This payment amount may change.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND 375/1000 percentage point(s) ( 2.375 %) to the Current Index for such Change Date. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D), this rounded amount will be my new interest rate until the next Change Date.

During the Interest-Only Period, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay accrued interest. This will be the amount of my monthly payment until the earlier of the next Change Date or the end of the Interest-Only Period unless I make a voluntary prepayment of principal during such period. If I make a voluntary prepayment of principal during the Interest-Only Period, my payment amount for subsequent payments will be reduced to the amount necessary to pay interest at the then current interest rate on the lower principal balance. At the end of the Interest-Only Period and on each Change Date thereafter, the

INTEREST-ONLY ADDENDUM TO ADJUSTABLE RATE PROMISSORY NOTE
FORM 603E 03/03/03                          Page 1 of 2

DocMagic eRerums 800-649-1362
www.docmagic.com

Page 20

Exhibit 1

603e1.als

Note Holder will determine the amount of the monthly payment that would be sufficient to repay in full the unpaid principal that I am expected to owe at the end of the Interest-Only Period or Change Date, as applicable, in equal monthly payments over the remaining term of the Note. The result of this calculation will be the new amount of my monthly payment. After the end of the Interest-Only Period, my payment amount will not be reduced due to voluntary prepayments.

## 7.   BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of  15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5 . 0 0 0 % of my overdue payment of interest during the Interest-Only Period, 5 . 0 0 0        % of my overdue payment of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.


_____  _____       _____  _____
Borrower                                    Date                                    Borrower                                   Date
KENNETH  FLANAGAN


_____  _____       _____  _____
Borrower                                    Date                                    Borrower                                   Date


_____  _____       _____  _____
Borrower                                    Date                                    Borrower                                   Date

INTEREST-ONLY ADDENDUM TO ADJUSTABLE RATE PROMISSORY NOTE
FORM 603E  03/03/03
Page 2 of 2

800-649-1362
www.docmagic.com

Page 21

Exhibit 1

603e2.als

Loan Number:

# ADDENDUM TO NOTE

This addendum is made MARCH 29, 2006 and is incorporated into and deemed to amend and supplement the Adjustable Rate Note of the same date.

The property covered by this addendum is described in the Security Instrument and located at:
18101 RIVIERA DRIVE, BLYTHE, CALIFORNIA 92225

## AMENDED PROVISIONS

In addition to the provisions and agreements made in the Note, I/we further covenant and agree as follows:

## ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

**Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 10.000% or less than 7.000 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than ONE AND 000/1000 percentage point(s) ( 1.000 %) from the rate of interest I have been paying for the preceding six (6) months. My interest rate will never be greater than 12.000 %. My interest rate will never be less than 7.000 %.

## UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

LIBOR ADDENDUM TO NOTE
FORM 1201 1-01

Page 1 of 2

Page 22

DocMagic *eFerms* 800-649-1362
www.docmagic.com

Exhibit 1

1201.ais.1.tem

In Witness Thereof, Trustor has executed this addendum.

_____
Witness

_____     _____
Borrower Signature KENNETH  FLANAGAN Date         Borrower Signature                     Date

_____     _____
Borrower Signature                     Date         Borrower Signature                     Date

_____     _____
Borrower Signature                     Date         Borrower Signature                     Date

LIBOR ADDENDUM TO NOTE
FORM 1201 1-01                              Page 2 of 2                     *DocMagic eRorms* 800-649-1362
                                           Page 23                            www.docmagic.com

                                                                            Exhibit 1

1201.als.2.tem

Loan Number:

# PREPAYMENT NOTE ADDENDUM
## (Multi-State)

This Prepayment Note Addendum is made this 29th day of   MARCH, 2006                 and is incorporated into and shall be deemed to amend and supplement the Note of the same date (the "Note") made by the undersigned (the "Borrower") to evidence indebtedness to    ALLSTATE HOME LOANS, INC. DBA ALLSTATE FUNDING, A CALIFORNIA CORPORATION                    (the "Lender"), which debt is secured by a Mortgage or Deed of Trust or comparable security instrument (the "Security Instrument") of the same date and covering the property described in the Security Instrument and located at
18101 RIVIERA DRIVE, BLYTHE, CALIFORNIA 92225

(the "Property").

**Additional Covenants.**  Notwithstanding anything to the contrary set forth in the Note or Security Instrument, Borrower and Lender covenant, and agree that, the provisions of the section of the Note entitled "BORROWER'S RIGHT TO PREPAY" are amended to read as follows:

Subject to the Prepayment penalty provided below, I have the right to make payments of Principal at any time before they are due.  A payment of Principal only is known as a "Prepayment."  A "Full Prepayment" is the prepayment of the entire unpaid Principal due under the Note.  A payment of only part of the unpaid Principal is known as a "Partial Prepayment."  When I make a Prepayment, I will tell the Note Holder in writing that I am doing so.  I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

**If, within the    12     month(s) period beginning with the date I execute the Note (the "Penalty Period"), I make a Full Prepayment, or Partial Prepayment in any twelve (12)-month period that exceeds 20% of the original Principal loan amount, I will pay a Prepayment charge as consideration for the Note Holder's acceptance of such Prepayment.  The Prepayment charge will equal the amount of interest that would accrue during a six (6)-month period on the amount prepaid that exceeds 20% of the original Principal balance of the Note, calculated at the rate of interest in effect under the terms of the Note at the time of the Prepayment, unless otherwise prohibited by applicable law or regulation.  No Prepayment charge will be assessed for any prepayment occurring after the Penalty Period.**

Notwithstanding the foregoing, in the event of a Full Prepayment concurrent with a bona fide sale of the Property to an unrelated third party after the first            month(s) of the term of the Note, no Prepayment penalty will be assessed.  In that event, I agree to provide the Note Holder with evidence acceptable to the Note Holder of such sale.

The Note Holder will apply all Prepayments to reduce the amount of Principal that I owe under the Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note.  If I make a Partial Prepayment, there will be no change in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes.

If my Note is an Adjustable Rate Note, Partial Prepayments may reduce the amount of my monthly payment after the first interest rate Change Date following the Partial Prepayment.  However, any reduction due to my Partial Prepayment may be offset by an interest rate increase.

DocMagic *eFamos* 800-649-1362
*www.docmagic.com*

**Exhibit 1**

A603b1.als.1.tem

The Note Holder's failure to collect a Prepayment charge at the time a Prepayment is received shall not be deemed a waiver of such charge. Any Prepayment charge not collected at the time the Prepayment is received shall be payable on demand.

All other provisions of the Note are unchanged and remain in full force and effect.

## NOTICE TO BORROWER

**Do not sign this Addendum before you read it. This Addendum provides for the payment of a Prepayment charge if you wish to repay the loan prior to the date provided for repayment in the Note.**

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED:


_____ (Seal)          _____ (Seal)
KENNETH  FLANAGAN          -Borrower                                       -Borrower


_____ (Seal)          _____ (Seal)
                            -Borrower                                       -Borrower


_____ (Seal)          _____ (Seal)
                            -Borrower                                       -Borrower

DocMagic *eForms* 800-649-1362
www.docmagic.com

Exhibit 1

A603b1.als.2.tem

3031325l

RECORDING REQUESTED BY
FIDELITY NATIONAL TITLE CO.
INLAND EMPIRE DIVISION

Recording Requested By:
ALLSTATE HOME LOANS, INC. DBA
ALLSTATE FUNDING

And After Recording Return To:
ALLSTATE HOME LOANS, INC. DBA ALLSTATE FUNDING
3030 OLD RANCH PARKWAY SUITE 270
SEAL BEACH, CALIFORNIA 90740



DOC # 2006-0254655
04/10/2006 08:00A Fee:90.00
Page 1 of 28
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder

| M | S | U | PAGE | SIZE | DA | PCOR | NOCOR | SMF | MISC. |
|---|---|---|---|---|---|---|---|---|---|
|  |  |  | 28 |  |  |  |  |  | MH |
| A | R | L |  |  | COPY | LONG | REFUND | NCHG | EXAM |

[Space Above This Line For Recording Data]

# DEED OF TRUST

90



T
MH

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)** "Security Instrument" means this document, which is dated    MARCH 29, 2006    , together with all Riders to this document.
**(B)** "Borrower" is KENNETH FLANAGAN, A MARRIED MAN, AS HIS SOLE AND SEPARATE PROPERTY

Borrower is the trustor under this Security Instrument.
**(C)** "Lender" is ALLSTATE HOME LOANS, INC. DBA ALLSTATE FUNDING

Lender is a  CALIFORNIA CORPORATION                                organized
and existing under the laws of  CALIFORNIA
Lender's address is 3030 OLD RANCH PARKWAY SUITE 270, SEAL BEACH, CALIFORNIA 90740
Lender is the beneficiary under this Security Instrument.
**(D)** "Trustee" is FIDELITY NATIONAL TITLE
301 EAST VANDERBILT WAY #400, SAN BERNARDINO, CALIFORNIA 92408

**(E)** "Note" means the promissory note signed by Borrower and dated    MARCH 29, 2006
The Note states that Borrower owes Lender TWO HUNDRED FIFTY-TWO THOUSAND AND
00/100                                    Dollars (U.S. $ 252,000.00              )
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than MAY 1, 2036        .
**(F)** "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
**(G)** "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

---

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3005 1/01                            Page 1 of 14                    DocMagic *eFarms* 800-649-1362
                                                                          *www.docmagic.com*

Ca3005.dox.1.tem

Public Record

Order: Non-Order Search  Doc: RV:2006 00254655        Page 1 of 28        Created By: lindaling  Printed: 4/5/2011 9:22:15 AM PST
Page 12 of 58

Exhibit 2

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☒ Adjustable Rate Rider | ☐ Condominium Rider | ☒ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☒ Other(s) [specify] |
| ☒ 1-4 Family Rider | ☐ Biweekly Payment Rider | ADDENDUM TO ADJUSTABLE RIDER, INTEREST ONLY ADDENDUM TO RIDER, PREPAYMENT RIDER |

(I)   "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J)   "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K)   "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L)   "Escrow Items" means those items that are described in Section 3.

(M)   "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N)   "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O)   "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P)   "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q)   "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

COUNTY                                              of   RIVERSIDE                                              :
[Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: 875-270-021-8

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3005 1/01
Page 2 of 14

DocMagic eFormns 800-649-1362
www.docmagic.com

Ca3005.dot.2.tem

Public Record

Exhibit 2

> Street # is invalid, unable to pull tax roll. Discrepancy
> to PIQ. APN is for 2127 current street number.

which currently has the address of   18101 RIVIERA DRIVE

                                                                    [Street]
BLYTHE                                           , California   92225        ("Property Address"):

         [City]                                                [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1.   **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.
Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.
2.   **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.
If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may

---

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3005 1/01                                    Page 3 of 14                   DocMagic *eForms* 800-649-1362
                                                                                www.docmagic.com

Ca3005.dot.3.tem

Public Record

Order: Non-Order Search  Doc: RV:2006 00254655          Page 3 of 28          Created By: lindaling  Printed: 4/5/2011 9:22:15 AM PST
                                                        Page 28

Exhibit 2

be applied to any late charges due.  Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.    **Funds for Escrow Items.**  Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for:  (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items."  At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item.  Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section.  Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items.  Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time.  Any such waiver may only be in writing.  In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require.  Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9.  If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank.  Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA.  Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds.  Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds.  Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA.  If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments.  If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.    **Charges; Liens.**  Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the

---

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3005 1/01

Page 4 of 14

DocMagic *e*Forms  800-649-1362
www.docmagic.com

Cal3005.dot.4.tem

Public Record

Order: Non-Order Search  Doc: RV:2006 00254655         Page 4 of 28                Created By: lindaling  Printed: 4/5/2011 9:22:15 AM PST
Page 29

Exhibit 2

Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement

---

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3005 1/01
Page 5 of 14

*DocMagic* **☎** 800-649-1362
www.docmagic.com

Ca3005.dot.5.tem

---

Public Record

Exhibit 2

is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or

Public Record

Exhibit 2

other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

---

Public Record

Exhibit 2

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

---

Public Record

Order: Non-Order Search  Doc: RV:2006 00254655          Page 8 of 28          Created By: lindaling   Printed: 4/5/2011 9:22:15 AM PST
                                                        Page 33

Exhibit 2

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

---

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3005 1/01
Page 9 of 14

DocMagic *eFarms* 800-649-1362
www.docmagic.com

Ca3005.doc.9.tem

Public Record

Page 34

**Exhibit 2**

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

Public Record

Exhibit 2

**21. Hazardous Substances.**  As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property.  The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property.  If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.  Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS.  Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.   Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise).  The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property.  The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.  If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold.  Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law.  Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law.  After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines.  Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

---

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3005 1/01                                                     Page 11 of 14

DocMagic *eForms* 800-649-1362
www.docmagic.com

Ca3005.dot.11.tem

Public Record

Exhibit 2

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3005 1/01                                    Page 12 of 14

DocMagic *eForms* 800-649-1362
www.docmagic.com

Ca3005.dot.12.tem

Public Record

Exhibit 2

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)                      _____ (Seal)
KENNETH FLANAGAN                 -Borrower                                                    -Borrower


_____ (Seal)                      _____ (Seal)
                                 -Borrower                                                    -Borrower


_____ (Seal)                      _____ (Seal)
                                 -Borrower                                                    -Borrower


Witness:                                                     Witness:


_____                             _____


CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3005 1/01                                    Page 13 of 14

DocMagic *eForms* 800-649-1362
www.docmagic.com

Ca3005.dot.13.tem

Public Record

Order: Non-Order Search  Doc: RV:2006 00254655          Page 13 of 28          Created By: lindaling   Printed:4/5/2011 9:22:15 AM PST
Page 33 of 58

Exhibit 2

———————————————— [Space Below This Line For Acknowledgment] ————————————————

State of California          )
                             ) ss.
County of *RIVERSIDE*        )
   On *29th March 2000* before me, *DIONDRA ANDERSON, NOTARY Public*

personally appeared  KENNETH  FLANAGAN

~~personally known to me~~ (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/~~are~~ subscribed to the within instrument and acknowledged to me that he/~~she/they~~ executed the same in his/~~her/their~~ authorized capacity(~~ies~~), and that by his/~~her/their~~ signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.



_____
NOTARY SIGNATURE

*DIONDRA ANDERSON, NOTARY Public*
(Typed Name of Notary)

NOTARY SEAL

DIONDRA ANDERSON
Commission # 1473562
Notary Public - California
Los Angeles County
My Comm. Expires Mar 2, 2008

---

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3005 1/01                                    Page 14 of 14
DocMagic *eFms* 800-549-1362
www.docmagic.com

Ca3005.dot.14.tem

Public Record

Exhibit 2

03/14/2006 13:44 FAX                                                                    002/013

Order No. 33313251 - A

# EXHIBIT "ONE"

Lot 4 as shown on that conditional Certificate of Compliance recorded June 21, 1993 as Instrument No. 93-234431 of Official Records of Riverside County, California, and is described as follows:

That portion of Lot 30 of Record of Survey on file in Book 31, Pages 63 through 66 thereof, of Record of Survey, Records of Riverside County, California, being more particularly described as follows:

Commencing at the Southeast corner of said Lot 30;
Thence North 40° 29′ 50″ West along the Southerly line of said Lot 30, a distance of 75.00 feet to an angle point therein;
Thence North 83° 35′ 30″ West along said Southerly line, a distance of 182.52 feet to the point of beginning;
Thence North 83° 35′ 30″ West continuing along said Southerly line, a distance of 127.81 feet;
Thence North 25° 42′ 58″ East, a distance of 210.25 feet, to the Northerly line of said Lot 30;
Thence Southeasterly along said Northerly line on a non-tangent curve concave Northeasterly, having a radius of 300.00 feet, through an angle of 14° 27′ 11″, an arc length of 75.67 feet (the initial radial line bears South 25° 42′ 58″ West) to a line which bears North 11° 15′ 47″ East from the point of beginning; thence South 11° 15′ 47″ West along said line, a distance of 183.28 feet to the point of beginning.

2                                                         (Rev. 11/17/04)

Public Record

Exhibit 2

Loan Number: Redacted

# PREPAYMENT RIDER
### (Multi-State)

This Prepayment Rider is made this 29th day of MARCH, 2006 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note (the "Note") to ALLSTATE HOME LOANS, INC. DBA ALLSTATE FUNDING, A CALIFORNIA CORPORATION (the "Lender") of the same date and covering the property described in the Security Instrument and located at 18101 RIVIERA DRIVE, BLYTHE, CALIFORNIA 92225

(the "Property").

**Additional Covenants.** Notwithstanding anything to the contrary set forth in the Note or Security Instrument, Borrower and Lender further covenant and agree as follows:

Borrower has the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." A "full prepayment" is the prepayment of the entire unpaid principal due under the Note. A payment of only part of the unpaid principal is known as a "partial prepayment."

**If, within the 12 month(s) period beginning with the date Borrower executes the Note (the "Penalty Period"), Borrower makes a full prepayment, or partial prepayment in any twelve (12)-month period that exceeds 20% of the original principal loan amount, Borrower will pay a prepayment charge as consideration for the Note Holder's acceptance of such prepayment. The prepayment charge will equal the amount of interest that would accrue during a six (6)-month period on the amount prepaid that exceeds 20% of the original principal balance of the Note, calculated at the rate of interest in effect under the terms of the Note at the time of the prepayment, unless otherwise prohibited by applicable law or regulation. No prepayment charge will be assessed for any prepayment occurring after the Penalty Period.**

Notwithstanding the foregoing, in the event of a full prepayment concurrent with a bona fide sale of the Property to an unrelated third party after the first month(s) of the term of the Note, no prepayment penalty will be assessed. In that event, Borrower agrees to provide the Note Holder with evidence acceptable to the Note Holder of such sale.

By signing below, Borrower accepts and agrees to the terms and covenants contained in this Prepayment Rider.

_____ (Seal)            _____ (Seal)
KENNETH FLANAGAN          -Borrower                                    -Borrower

_____ (Seal)            _____ (Seal)
                          -Borrower                                    -Borrower

_____ (Seal)            _____ (Seal)
                          -Borrower                                    -Borrower

PREPAYMENT RIDER - 6038.2 MULTI-STATE
11/15/99

DocMagic *eFrms* 800-649-1362
www.docmagic.com

A6038.2.uls

Exhibit 2

Loan Number: Redacted

# 1-4 FAMILY RIDER
## (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this 29th day of MARCH, 2006 ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Note to ALLSTATE HOME LOANS, INC. DBA ALLSTATE
FUNDING, A CALIFORNIA CORPORATION
(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

18101 RIVIERA DRIVE, BLYTHE, CALIFORNIA 92225
[Property Address]

1-4 FAMILY COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY
INSTRUMENT.** In addition to the Property described in Security Instrument, the following
items now or hereafter attached to the Property to the extent they are fixtures are added to the
Property description, and shall also constitute the Property covered by the Security Instrument:
building materials, appliances and goods of every nature whatsoever now or hereafter located
in, on, or used, or intended to be used in connection with the Property, including, but not
limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas,
water, air and light, fire prevention and extinguishing apparatus, security and access control
apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves,
refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors,
screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and
attached floor coverings, all of which, including replacements and additions thereto, shall be
deemed to be and remain a part of the Property covered by the Security Instrument. All of the
foregoing together with the Property described in the Security Instrument (or the leasehold
estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and
the Security Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek,
agree to or make a change in the use of the Property or its zoning classification, unless Lender
has agreed in writing to the change. Borrower shall comply with all laws, ordinances,
regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not
allow any lien inferior to the Security Instrument to be perfected against the Property without
Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss
in addition to the other hazards for which insurance is required by Section 5.

---

MULTISTATE 1-4 FAMILY RIDER
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3170 1/01                                        Page 1 of 3

DocMagic *eForms* 800-649-1362
www.docmagic.com

Us3170.rid.1.tem

Public Record

Order: Non-Order Search  Doc: RV:2006 00254655          Page 17 of 28          Created By: lindaling  Printed:4/5/2011 9:22:15 AM PST
Page 42

Exhibit 2

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default

MULTISTATE 1-4 FAMILY RIDER
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3170 1/01                          Page 2 of 3

DocMagic *eFarms* 800-649-1362
www.docmagic.com

Us3170.rid.2.tem

Public Record

Exhibit 2

or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I.   CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.

_____ (Seal)        _____ (Seal)
KENNETH  FLANAGAN          -Borrower                                           -Borrower

_____ (Seal)        _____ (Seal)
                           -Borrower                                           -Borrower

_____ (Seal)        _____ (Seal)
                           -Borrower                                           -Borrower

MULTISTATE 1-4 FAMILY RIDER
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3170 1/01                      Page 3 of 3

DocMagic *eForms* 800-649-1362
www.docmagic.com

Us3170.rid.3.tem

Public Record

Exhibit 2

Loan Number: Redacted

# ADJUSTABLE RATE RIDER
## (LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 29th day of MARCH, 2006 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to ALLSTATE HOME LOANS, INC. DBA ALLSTATE FUNDING, A CALIFORNIA CORPORATION ("Lender") of the same date and covering the property described in the Security Instrument and located at:

18101 RIVIERA DRIVE, BLYTHE, CALIFORNIA 92225
[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT.  THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.**  In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A.  INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial interest rate of        7.000 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

## 4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A)  Change Dates
The interest rate I will pay may change on the 1st  day of  MAY, 2011 , and on that day every 6th  month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B)  The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information.  The Note Holder will give me notice of this choice.

---

MULTISTATE ADJUSTABLE RATE RIDER--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)
Single Family--Fannie Mae MODIFIED INSTRUMENT
Form 3138 1/01                          Page 1 of 3

DocMagic *eForms* 800-649-1362
www.docmagic.com

Us3138.rid.1.tem

Public Record

Exhibit 2

**(C)   Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND 375/1000                   percentage points (    2.375 %) to the Current Index.  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%).  Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments.  The result of this calculation will be the new amount of my monthly payment.

**(D)   Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 10.000 % or less than    7.000 %.  Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE AND 000/1000                   percentage points (    1.000 %) from the rate of interest I have been paying for the preceding    6    months.  My interest rate will never be greater than 12.000 %.   My interest rate will never be less than    2.375 %.

**(E)   Effective Date of Changes**

My new interest rate will become effective on each Change Date.  I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F)   Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change.  The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B.   TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.**  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.  Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan

MULTISTATE ADJUSTABLE RATE RIDER--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)
Single Family--Fannie Mae MODIFIED INSTRUMENT
Form 3138 1/01                    Page 2 of 3

*DocMagic* €ℱ𝑜𝑟𝑚𝑠 800-649-1362
*www.docmagic.com*

Us3138.rid.2.tem

Public Record

Order: Non-Order Search  Doc: RV:2006 00254655          Page 21 of 28          Created By: lindaling   Printed: 4/5/2011 9:22:15 AM PST
Page 46

Exhibit 2

assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)          _____ (Seal)
KENNETH FLANAGAN          -Borrower                                              -Borrower

_____ (Seal)          _____ (Seal)
                                              -Borrower                                              -Borrower

_____ (Seal)          _____ (Seal)
                                              -Borrower                                              -Borrower

MULTISTATE ADJUSTABLE RATE RIDER--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)
Single Family--Fannie Mae MODIFIED INSTRUMENT
Form 3138 1/01                                    Page 3 of 3

DocMagic *eFerms* 800-649-1362
www.docmagic.com

Us3138.rid.3.tem

Public Record

Exhibit 2

Loan Number: Redacted

# ADDENDUM TO ADJUSTABLE RATE RIDER

This addendum is made MARCH 29, 2006 and is incorporated into and deemed to amend and supplement the Adjustable Rate Rider of the same date.

The property covered by this addendum is described in the Security Instrument and located at:
18101 RIVIERA DRIVE, BLYTHE, CALIFORNIA 92225

## AMENDED PROVISIONS

In addition to the provisions and agreements made in the Security Instrument, I/we further covenant and agree as follows:

## ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

### Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 10.000 % or less than 7.000 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than ONE AND 000/1000 percentage point(s) ( 1.000 %) from the rate of interest I have been paying for the preceding six (6) months. My interest rate will never be greater than 12.000 %. My interest rate will never be less than 7.000%.

## TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

LIBOR ADDENDUM TO ADJUSTABLE RATE RIDER
FORM 1202 1-01    Page 1 of 2    DocMagic eForms 800-649-1362
www.docmagic.com

1202.ais.1.tem

Public Record

Exhibit 2

In Witness Thereof, Trustor has executed this addendum.

_____
Witness

_Kenneth Flanagan_    3/29/06    _____
Borrower Signature KENNETH    Date    Borrower Signature    Date
FLANAGAN

_____    _____
Borrower Signature    Date    Borrower Signature    Date

_____    _____
Borrower Signature    Date    Borrower Signature    Date

LIBOR ADDENDUM TO ADJUSTABLE RATE RIDER
FORM 1202 1-01    Page 2 of 2    DocMagic *e*Forms 800-649-1362
www.docmagic.com

1202.xls.2.tem

Public Record

Exhibit 2

# INTEREST-ONLY ADDENDUM
# TO ADJUSTABLE RATE RIDER

Loan Number: Redacted

Property Address: 18101 RIVIERA DRIVE, BLYTHE, CALIFORNIA 92225

THIS ADDENDUM is made this 29th   day of MARCH, 2006                , and is
incorporated into and intended to form a part of the Adjustable Rate Rider (the "Rider") dated the same date
as this Addendum executed by the undersigned and payable to ALLSTATE HOME LOANS,
INC. DBA ALLSTATE FUNDING, A CALIFORNIA CORPORATION
                                                                (the Lender).

THIS ADDENDUM supersedes Section 4(C) of the Rider.  None of the other provisions of the Note are
changed by this Addendum.

## 4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding
TWO AND 375/1000                        percentage point(s) (      2.375  %) to
the Current Index for such Change Date.  The Note Holder will then round the result of this addition to the
nearest one-eighth of one percentage point (0.125%).  Subject to the limits stated in Section 4(D), this
rounded amount will be my new interest rate until the next Change Date.

During the Interest-Only Period, the Note Holder will then determine the amount of the monthly
payment that would be sufficient to repay accrued interest.  This will be the amount of my monthly payment
until the earlier of the next Change Date or the end of the Interest-Only Period unless I make a voluntary
prepayment of principal during such period.  If I make a voluntary prepayment of principal during the
Interest-Only Period, my payment amount for subsequent payments will be reduced to the amount necessary
to pay interest at the then current interest rate on the lower principal balance.  At the end of the Interest-Only
Period and on each Change Date thereafter, the Note Holder will determine the amount of the monthly
payment that would be sufficient to repay in full the unpaid principal that I am expected to owe at the end
of the Interest-Only Period or Change Date, as applicable, in equal monthly payments over the remaining
term of the Note.  The result of this calculation will be the new amount of my monthly payment.  After the
end of the Interest-Only Period, my payment amount will not be reduced due to voluntary prepayments.

---

INTEREST-ONLY ADDENDUM TO ADJUSTABLE RATE RIDER
FORM 603F  02/04/04                                Page 1 of 2

DocMagic *eFcrms* 800-649-1362
www.docmagic.com

603f.als.1.tem

---

Public Record

Order: Non-Order Search  Doc: RV:2006 00254655          Page 25 of 28          Created By: lindaling   Printed: 4/5/2011 9:22:15 AM PST
Page 56

Exhibit 2

_____ (Seal)        _____ (Seal)
KENNETH  FLANAGAN           -Borrower                                        -Borrower


_____ (Seal)        _____ (Seal)
                           -Borrower                                        -Borrower


_____ (Seal)        _____ (Seal)
                           -Borrower                                        -Borrower

INTEREST-ONLY ADDENDUM TO ADJUSTABLE RATE RIDER
FORM 603F  02/04/04                    Page 2 of 2                    DocMagic *eForms* 800-649-1362
                                                                     www.docmagic.com

603f.als.2.tem

Public Record

Exhibit 2

Loan Number: Redacted

# SECOND HOME RIDER

THIS SECOND HOME RIDER is made this **29th** day of **MARCH 2006**,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower,"
whether there are one or more persons undersigned) to secure Borrower's Note to **ALLSTATE HOME
LOANS, INC. DBA ALLSTATE FUNDING, A CALIFORNIA CORPORATION**
(the "Lender") of the same date and covering the Property described in the Security Instrument (the
"Property"), which is located at:

**18101 RIVIERA DRIVE, BLYTHE, CALIFORNIA 92225**
[Property Address]

In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender
further covenant and agree that Sections 6 and 8 of the Security Instrument are deleted and are replaced by
the following:

**6. Occupancy.** Borrower shall occupy, and shall only use, the Property as Borrower's second
home. Borrower shall keep the Property available for Borrower's exclusive use and enjoyment at
all times, and shall not subject the Property to any timesharing or other shared ownership
arrangement or to any rental pool or agreement that requires Borrower either to rent the Property
or give a management firm or any other person any control over the occupancy or use of the
Property.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan
application process, Borrower or any persons or entities acting at the direction of Borrower or with
Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or
statements to Lender (or failed to provide Lender with material information) in connection with the
Loan. Material representations include, but are not limited to, representations concerning
Borrower's occupancy of the Property as Borrower's second home.

MULTISTATE SECOND HOME RIDER--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3890 1/01                                    Page 1 of 2

DocMagic *eForms* 800-649-1362
www.docmagic.com

Us3890.rid.1.tem

Public Record

Exhibit 2

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Second Home Rider.

_____ (Seal)
KENNETH FLANAGAN        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

MULTISTATE SECOND HOME RIDER--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3890 1/01                    Page 2 of 2

DocMagic *ERorms* 800-649-1362
www.docmagic.com

Us3890.rid.2.tem

Public Record

Order: Non-Order Search  Doc: RV:2006 00254655       Page 28 of 28        Created By: lindaling    Printed:4/5/2011 9:22:15 AM PST
Page 53

Exhibit 2

Recording Requested By:
WELLS FARGO BANK, N.A.

When Recorded Return To:

DEFAULT ASSIGNMENT
WELLS FARGO BANK, N.A.
MAC: X9999-018
PO BOX 1629
MINNEAPOLIS, MN  55440-9790

**DOC # 2011-0366078**
08/18/2011 04:12P Fee:21.00
Page 1 of 2
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder

21-
M
042
042

## CORPORATE ASSIGNMENT OF DEED OF TRUST

Riverside, California
SELLER'S SERVICING #                "FLANAGAN"
SELLER'S LENDER ID#: 822
INVESTOR'S LOAN #:
OLD SERVICING #:

MERS #: Redacted        SIS #: 1-888-679-6377

Prepared By:  Anthony Driskill,  WELLS FARGO BANK, N.A. 1000 BLUE GENTIAN RD., EAGAN, MN  55121 (651)605-3792

For Value Received, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR ALLSTATE HOME LOANS, INC. DBA ALLSTATE FUNDING, ITS SUCCESSORS AND ASSIGNS hereby grants, assigns and tranfers to HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE FOR NOMURA ASSET ACCEPTANCE CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-AF2 at _____ all beneficial interest under that certain Deed of Trust dated 03/29/2006 , in the amount of $252,000.00, executed by KENNETH  FLANAGAN, A MARRIED MAN, AS HIS SOLE AND SEPARATE PROPERTY to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR ALLSTATE HOME LOANS, INC. DBA ALLSTATE FUNDING, ITS SUCCESSORS AND ASSIGNS and Recorded:  04/10/2006  in Book/Reel/Liber: N/A Page/Folio: N/A as Instrument No.: 2006-0254657 in the County of Riverside, State of California.

 Therein described or referred to, in said Deed of Trust, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

In witness whereof this instrument is executed.

 MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR ALLSTATE HOME LOANS, INC. DBA ALLSTATE FUNDING, ITS SUCCESSORS AND ASSIGNS
On *August 2, 2011*

_____
**Michael Snively**_____,Assistant
Secretary

*ADD*ADDWFEM*07/26/2011 08:07:21 AM* WFEM01WFEMA00000000000000000055772* CARIVER*        CASTATE_TRUST_ASSIGN_ASSN **ADDWFEM*

Exhibit 3

CORPORATE ASSIGNMENT OF DEED OF TRUST Page 2 of 2

STATE OF Minnesota
COUNTY OF Dakota

On _8/2/11_ , before me, _Julie Ann Prieto_ a Notary Public in and for Dakota in the
State of Minnesota, personally appeared __Michael Snively__ , Assistant  Secretary, personally known to
me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_Julie Ann Prieto_

Notary Expires: _1/31/20 14_

JULIE ANN PRIETO
NOTARY PUBLIC
MINNESOTA
My Commission Expires Jan. 31, 2014

(This area for notarial seal)

Exhibit 3

Official Form 6A (12/07)

In Re:    MOORE, MICHAEL EUGENE                    Case No. _____
         _____                   (if known)
                   **Debtor**

# SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a co-tenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, or both own the property by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint or Community". If the debtor holds no interest in real property, write "None" under "Description and Location of Property".

Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim".

If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property Without Deducting Any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| Single Family Residence: 2127 Riviera Drive Blythe, CA. | Equitable interest | | 183,985.00 | 308,000.00 |
| | | Total | $183,985.00 | |

Exhibit 4

Official Form 6D (12/07)

In Re:    MOORE, MICHAEL EUGENE                          Case No. _____
_____                        (if known)
                  Debtor

## SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of the filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. § 112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor", include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim Without Deducting Value of Collateral" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion, if Any" on the Statistical Summary of Certain Liabilities and Related Data.

☐ Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| Creditor's Name and Mailing Address Including Zip Code | Codebtor | Husband, Wife, Joint, or Community | Date Claim was Incurred, Nature of Lien, and Description and Value of Property Subject to Lien | Contingent | Unliquidated | Disputed | Amount of Claim Without Deducting Value of Collateral | Unsecured Portion, If Any |
|---|---|---|---|---|---|---|---|---|
| Account Number: 1875 | | | 1st TD on real property located at 2127 Riviera Dr. Blythe, CA 92225 | | | | 303,909.76 | |
| ASC<br>P.O. Box 10388<br>Des Moines, IA 50306 | | | | | | | | |
| | | | VALUE $      183,985.00 | | | | | |
| Account Number: | | | | | | | | |
| | | | VALUE $      183,985.00 | | | | | |
| Account Number: | | | | | | | | |
| | | | VALUE $ | | | | | |
| | | | Subtotal<br>(Total of this page) | | | | $303,909.76 | $0.00 |
| | | | Total<br>(Use only on last page) | | | | $303,909.76 | |
| | | | | | | | (Report also on Summary of Schedules.) | (If applicable, report also on Statistical Summary of Certain Liabilities and Related Data.) |

_0_  continuation sheets attached

Exhibit 4

From: Financial Solutions 6-13-9-296-2417

DOC #442458-032783
07/08/2013 12:44P Fee:28.00
Page 1 of 2
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder



RECORDING REQUESTED BY

WHEN RECORDED MAIL TO

Michael Eugene Moore
357 n Sheridan St 101
Corona, Ca  92880

| S | R | U | PAGE | SIZE | DA | MISC | LONG | RFD | COPY |
|---|---|---|------|------|----|------|------|-----|------|
|   |   |   | 2    |      |    |      |      |     | 850  |
| M | A | L | 465  | 426  | PCOR | NCOR | SMF | NCHG | EXAM 524 |
|   |   |   |      |      |    | T:   |      | CTY | UNI |      |

36.50

C
524

## GRANT DEED

The undersigned Grantor(s) declare(s)

ESCROW NO.:
TITLE ORDER NO.:

ASSESSOR'S PARCEL NO.:875-270-021-8

Documentary transfer tax is $ 0 00
CITY TAX IS $0.00  GIFT
(x) computed on full value of property
conveyed,  OR

( ) computed on the full value less liens of
encumbrances remaining at the time of sale.

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged:
 Kenneth Flanagan,  a married man as his sole and separate property
hereby  GRANT(S) to  Kenneth Flanagan , a married man as his sole and separate property as to an
undivided 50% interest and Michael Eugene Moore a single man, as to an undivided 50% interest.

The following real property in the City of Blythe , County of Riverside  , State of California:

described  as  See Attached  EXHIBIT A

More commonly known as: 2127 Riviera Dr Blythe, Ca. 92225 (formally 18101 Riviera dr blythe Ca ) ,

Date: June 01, 2013

_____
Kenneth Flanagan

STATE OF CALIFORNIA          )
COUNTY OF Riverside          )

On 27 June 2013                before me,
DIONDRA D ANDERSON, a notary public, Personally
appeared  KENNETH FLANAGAN

, who proved to me on the basis of  satisfactory evidence  to
be the person(s) whose  name(s) is/are subscribed to the
within instrument  and acknowledged to me that he/she/they
executed the  same in his/her/their authorized capacity(ies),
and that by his/her/their signature(s) on the instrument  the
person(s) or the  entity upon behalf of which the  person(s)
acted, executed the instrument.
I certify under PENALTY OF PERJURY under  the laws of
the State of California that  the foregoing paragraph is
true and correct.

Signature _____

MAIL TAX STATEMENTS AS DIRECTED ABOVE

DIONDRA D. ANDERSON
COMM. # 1968559
NOTARY PUBLIC - CALIFORNIA
RIVERSIDE COUNTY
My Comm. Expires March 2, 2016

Witness my hand and official seal

(This area for official notrial seal)

Exhibit 5

# EXHIBIT "A"
## LEGAL DESCRIPTION

All that certain real property situated in the County of RIVERSIDE, State of CALIFORNIA, described as follows:

PARCEL 28:

LOT 4 AS SHOWN ON THAT CONDITIONAL CERTIFICATE OF COMPLIANCE RECORDED JUNE 21, 1993 AS INSTRUMENT NO. 93-234431 OF OFFICIAL RECORDS OF RIVERSIDE COUNTY, CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

THAT PORTION OF LOT 30 OF RECORD OF SURVEY ON FILE IN BOOK 31 PAGES 63 THROUGH 66 THEREOF, OF RECORDS OF SURVEY, RECORDS OF RIVERSIDE COUNTY, CALIFORNIA, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCING AT THE SOUTHEAST CORNER OF SAID LOT 30;
THENCE NORTH 40° 29' 50" WEST ALONG THE SOUTHERLY LINE OF SAID LOT 30, A DISTANCE OF 75.00 FEET TO AN ANGLE POINT THEREIN;
THENCE NORTH 83° 35' 30" WEST ALONG SAID SOUTHERLY LINE, A DISTANCE OF 182.52 FEET TO THE POINT OF BEGINNING;
THENCE NORTH 83° 35' 30" WEST CONTINUING ALONG SAID SOUTHERLY LINE, A DISTANCE OF 127.81 FEET;
THENCE NORTH 25° 42' 58" EAST, A DISTANCE OF 210.25 FEET, TO THE NORTHERLY LINE OF SAID LOT 30;
THENCE SOUTHEASTERLY ALONG SAID NORTHERLY LINE ON A NON-TANGENT CURVE CONCAVE NORTHEASTERLY, HAVING A RADIUS OF 300.00 FEET, THROUGH AN ANGLE OF 14° 27' 11", AN ARC LENGTH OF 75.67 FEET (THE INITIAL RADIAL LINE BEARS SOUTH 25° 42' 58" WEST) TO A LINE WHICH BEARS NORTH 11° 15' 47" EAST FROM THE POINT OF BEGINNING;
THENCE SOUTH 11° 15' 47" WEST ALONG SAID LINE, A DISTANCE OF 183.28 FEET TO THE POINT OF BEGINNING.

**Assessor Parcel No(s).:**      875-270-021-8

Exhibit 5

**CLOSED**

# U.S. Bankruptcy Court
## Central District Of California (Riverside)
## Bankruptcy Petition #: 6:11-bk-20336-DS

|  |  |
|---|---|
| *Date filed:* | 03/30/2011 |

*Assigned to:* Deborah J. Saltzman
Chapter 7
Voluntary
No asset

|  |  |
|---|---|
| *Date terminated:* | 08/16/2011 |
| *Debtor discharged:* | 07/25/2011 |
| *Joint debtor discharged:* | 07/25/2011 |
| *341 meeting:* | 05/10/2011 |
| *Deadline for objecting to discharge:* | 07/11/2011 |

*Debtor disposition:* Standard Discharge
*Joint debtor disposition:* Standard Discharge

**Debtor**
**Kenneth Flanagan**
6041 Gold Spirit St
Corona, CA 92880
RIVERSIDE-CA
SSN / ITIN: xxx-xx-4413
*aka* **Kenneth Ray Flanagan**
*aka* **Kenneth R Flanagan**

represented by **Koko B Offiong**
Law Office of Koko B
Offiong
170 South Beverly Dr #304
Beverly Hills, CA 90212
310-553-9533
Fax : 310-553-9549
Email: kokolegal@aol.com

*Joint Debtor*
**Krista Flanagan**
6041 Gold Spirit St
Corona, CA 92880
RIVERSIDE-CA
SSN / ITIN: xxx-xx-2909
*aka* **Krista Ann Flanagan**
*aka* **Krista A Flanagan**

represented by **Koko B Offiong**
(See above for address)

*Trustee*
**Robert L Goodrich (TR)**
22365 Barton Rd. Suite 220
Grand Terrace, CA 92313
(909) 423-0700

*U.S. Trustee*
**United States Trustee (RS)**
3801 University Avenue, Suite 720
Riverside, CA 92501-3200
(951) 276-6990

| **Filing Date** | **#** | **Docket Text** |
|---|---|---|
|  |  |  |

**Exhibit 6**

https://ecf.cacb.uscourts.gov/cgi-bin/DktRpt.pl?810734384467787-L_1_0-1                    8/5/2013

CM/ECF - U.S. Bankruptcy Court (v5.1 - LIVE)          Page 2 of 5
Case 6:13-bk-21735-MH    Doc 9-1    Filed 08/30/13    Entered 08/30/13 10:34:38    Desc
Exhibit (s) 1 - 8    Page 47 of 58

| | | |
|---|---|---|
| 03/30/2011 | [1](#)<br>(77 pgs) | Chapter 7 Voluntary Petition . Fee Amount $299 Filed by Kenneth Flanagan, Krista Flanagan (Offiong, Koko) (Entered: 03/30/2011) |
| 03/30/2011 | | Receipt of Voluntary Petition (Chapter 7)(6:11-bk-20336) [misc,volp7] ( 299.00) Filing Fee. Receipt number 19597494. Fee amount 299.00. (U.S. Treasury) (Entered: 03/30/2011) |
| 03/30/2011 | [2](#) | Statement of Social Security Number(s) Form B21 Filed by Debtor Kenneth Flanagan, Joint Debtor Krista Flanagan. (Offiong, Koko) (Entered: 03/30/2011) |
| 03/30/2011 | [3](#)<br>(2 pgs) | Certificate of Credit Counseling Filed by Debtor Kenneth Flanagan, Joint Debtor Krista Flanagan. (Offiong, Koko) (Entered: 03/30/2011) |
| 03/30/2011 | [4](#)<br>(2 pgs) | Meeting of Creditors with 341(a) meeting to be held on 05/10/2011 at 11:00 AM at RM 100B, 3420 Twelfth St., Riverside, CA 92501. Objections for Discharge due by 07/11/2011. (Offiong, Koko) (Entered: 03/30/2011) |
| 04/01/2011 | [5](#)<br>(3 pgs) | Notice of Requirement to Complete Course in Financial Management (BNC) . (Zari, Jan) (Entered: 04/01/2011) |
| 04/03/2011 | [6](#)<br>(5 pgs) | BNC Certificate of Notice (RE: related document(s) [4](#) Meeting (Chapter 7)) No. of Notices: 69. Service Date 04/03/2011. (Admin.) (Entered: 04/03/2011) |
| 04/03/2011 | [7](#)<br>(4 pgs) | BNC Certificate of Notice (RE: related document(s) [5](#) Notice of Requirement to Complete Course in Financial Management (BNC)) No. of Notices: 1. Service Date 04/03/2011. (Admin.) (Entered: 04/03/2011) |
| 04/11/2011 | [8](#)<br>(4 pgs) | Financial Management Course Certificate Filed Filed by Debtor Kenneth Flanagan, Joint Debtor Krista Flanagan. (Offiong, Koko) (Entered: 04/11/2011) |
| 04/18/2011 | [9](#)<br>(1 pg) | Request for courtesy Notice of Electronic Filing (NEF) Filed by Christopher M McDermott on behalf of Courtesy NEF. (McDermott, Christopher) (Entered: 04/18/2011) |

Exhibit 6

| | | |
|---|---|---|
| 04/29/2011 | 10<br>(1 pg) | Request for special notice Filed by Creditor HSBC Bank Nevada, N.A.. (Bass, Patti) (Entered: 04/29/2011) |
| 05/11/2011 | | Chapter 7 Trustee's Report of No Distribution: I, Robert L Goodrich (TR), having been appointed trustee of the estate of the above-named debtor(s), report that I have neither received any property nor paid any money on account of this estate; that I have made a diligent inquiry into the financial affairs of the debtor(s) and the location of the property belonging to the estate; and that there is no property available for distribution from the estate over and above that exempted by law. Pursuant to Fed R Bank P 5009, I hereby certify that the estate of the above-named debtor(s) has been fully administered. I request that I be discharged from any further duties as trustee. Key information about this case as reported in schedules filed by the debtor(s) or otherwise found in the case record: This case was pending for 1 months. Assets Abandoned (without deducting any secured claims): $ 1088000.00, Assets Exempt: $ 7536.00, Claims Scheduled: $ 3392929.69, Claims Asserted: Not Applicable, Claims scheduled to be discharged without payment (without deducting the value of collateral or debts excepted from discharge): $ 3392929.69. Filed by Trustee Robert L Goodrich (TR) (RE: related document(s)4 Meeting of Creditors with 341). (Goodrich (TR), Robert) (Entered: 05/11/2011) |
| 06/08/2011 | 11<br>(44 pgs; 2 docs) | Notice of motion and motion for relief from the automatic stay with supporting declarations REAL PROPERTY RE: 16186 Singing Hills Drive, Chino Hills, California 91709 *with Proof of Service*. Fee Amount $150, Filed by Creditor HSBC Bank USA, National Association, as Trustee for the Holders of Nomura Home Equity Loan, Inc., Home Equity Loan Trust, Series 2007-1 (Attachments: 1 Exhibit (s) 1 - 5) (Thiara, Balpreet) (Entered: 06/08/2011) |
| 06/08/2011 | | Receipt of Motion for Relief from Stay - Real Property(6:11-bk-20336-DS) [motion,nmrp] ( 150.00) Filing Fee. Receipt number 20824528. Fee amount 150.00. (U.S. Treasury) (Entered: 06/08/2011) |
| | | Hearing Set (RE: related document(s)11 Motion for Relief from Stay - Real Property filed by Creditor |

**Exhibit 6**

| | | |
|---|---|---|
| 06/09/2011 | | HSBC Bank USA, National Association, as Trustee for the Holders of Nomura Home Equity Loan, Inc., Home Equity Loan Trust, Series 2007-1) The Hearing date is set for 7/13/2011 at 08:30 AM at Crtrm 304, 3420 Twelfth St., Riverside, CA 92501. The case judge is Deborah J. Saltzman (Sapronetti, Denise) (Entered: 06/09/2011) |
| 07/18/2011 | 12 | Hearing Held (Bk Motion) (RE: related document(s) 11 Motion for Relief from Stay - Real Property) (Sapronetti, Denise) - GRANTED - Final Ruling - No tentative ruling. This is a FINAL RULING. This motion was set for hearing in accordance with Local Bankruptcy Rule (?LBR?) 9013-1(d). The failure of the debtor, the trustee, and any other party to file written opposition at least 14 days prior to the hearing pursuant to LBR 9013-1(f) is deemed consent to the granting of the motion. LBR 9013-1 (h); Ghazali v. Moran, 46 F.3d 52, 53 (9th Cir. 1995). Further, because the court is granting the relief that the moving party requested and for which a prima facie case has been established, an actual hearing is not necessary. Boone v. Burk (In re Eliapo), 468 F.3d 592, 602 (9th Cir. 2006). Their defaults are entered and the court will resolve the matter without oral argument. LBR 9013-1(j)(3). NO APPEARANCE IS NECESSARY. GRANT under 11 U.S.C. § 362(d)(1) and (d)(2). GRANT as binding despite conversion. GRANT waiver of FRBP 4001(a)(3) stay. MOVANT TO LODGE ORDER WITHIN 7 DAYS. BY VIRTUE OF THE ENTRY OF THIS ORDER, THE BORROWER'S (S') BANKRUPTCY PROCEEDINGS HAVE BEEN FINALIZED WITH REGARD TO THE SUBJECT PROPERTY WITHIN THE MEANING OF CALIFORNIA CIVIL CODE SECTION 2923.5 (h)(3). (Entered: 07/18/2011) |
| 07/25/2011 | 13 (2 pgs) | DISCHARGE OF DEBTOR(S): Both Debtors (BNC) (RE: related document(s)4 Meeting (Chapter 7)) (Sapronetti, Denise) (Entered: 07/25/2011) |
| 07/27/2011 | 14 (5 pgs) | BNC Certificate of Notice (RE: related document(s) 13 DISCHARGE OF DEBTOR - Chapter 7 (BNC)) No. of Notices: 65. Service Date 07/27/2011. (Admin.) (Entered: 07/27/2011) |
| | 15 (6 pgs) | Order Granting Motion for relief from the automatic stay REAL PROPERTY, with HSBC Bank USA, |

| | | |
|---|---|---|
| 07/29/2011 | | (BNC-PDF) (Related Doc # 11) Signed on 7/29/2011 (Sapronetti, Denise) (Entered: 07/29/2011) |
| 07/31/2011 | 16 (7 pgs) | BNC Certificate of Notice - PDF Document. (RE: related document(s)15 Motion for relief from the automatic stay REAL PROPERTY (BNC-PDF)) No. of Notices: 2. Service Date 07/31/2011. (Admin.) (Entered: 07/31/2011) |
| 08/16/2011 | 17 (1 pg) | Bankruptcy Case Closed - DISCHARGE (Firman, Karen) (Entered: 08/16/2011) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 08/05/2013 09:42:32 | | | |
| **PACER Login:** | gm0080 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 6:11-bk-20336-DS Fil or Ent: filed To: 8/5/2013 Doc From: 0 Doc To: 99999999 Term: included Format: html Page counts for documents: included |
| **Billable Pages:** | 3 | **Cost:** | 0.30 |

Exhibit 6

CM/ECF - U.S. Bankruptcy Court (v5.1 - LIVE)                              Page 1 of 4
Case 6:13-bk-21735-MH    Doc 9-1    Filed 08/30/13    Entered 08/30/13 10:34:38    Desc
Exhibit (s) 1 - 8    Page 51 of 58

**PlnDue, Incomplete, DISMISSED, CLOSED**

# U.S. Bankruptcy Court
## Central District Of California (Riverside)
### Bankruptcy Petition #: 6:13-bk-14370-DS

|  |  |
|---|---|
| *Assigned to:* Deborah J. Saltzman | *Date filed:* 03/12/2013 |
| Chapter 13 | *Date terminated:* 05/21/2013 |
| Voluntary | *Debtor dismissed:* 04/01/2013 |
| Asset | *341 meeting:* 04/23/2013 |

*Debtor disposition:* Dismissed for Failure to File Information

**Debtor**                                                    represented by **Michael Eugene Moore**
**Michael Eugene Moore**                                                          PRO SE
13766 Turf Paradise
Corona, CA 92880
RIVERSIDE-CA
SSN / ITIN: xxx-xx-5626

**Trustee**
**Rod (DS) Danielson (TR)**
3787 University Avenue
Riverside, CA 92501
(951) 826-8000

**U.S. Trustee**
**United States Trustee (RS)**
3801 University Avenue, Suite 720
Riverside, CA 92501-3200
(951) 276-6990

| Filing Date | # | Docket Text |
|---|---|---|
|  | [1]<br>(7 pgs; 3 docs) | Chapter 13 Voluntary Petition . Fee Amount $281 Filed by Michael Eugene Moore Schedule A due 3/26/2013. Schedule B due 3/26/2013. Schedule C due 3/26/2013. Schedule D due 3/26/2013. Schedule E due 3/26/2013. Schedule F due 3/26/2013. Schedule G due 3/26/2013. Schedule H due 3/26/2013. Schedule I due 3/26/2013. Schedule J due 3/26/2013. Statement of Financial Affairs due 3/26/2013. Chapter 13 Plan due by 3/26/2013. Statement - Form 22C Due: 3/26/2013.Statement of Related Case due 3/26/2013. Notice of available |

**Exhibit 7**

| | | |
|---|---|---|
| 03/12/2013 | | chapters due 3/26/2013. Statement of assistance of non-attorney due 3/26/2013. Summary of schedules due 3/26/2013. Declaration concerning debtors schedules due 3/26/2013. Cert. of Credit Counseling due by 3/26/2013. Statistical Summary due 3/26/2013. Debtor Certification of Employment Income due by 3/26/2013. Incomplete Filings due by 3/26/2013. (Pinones, Maria) (Entered: 03/12/2013) |
| 03/12/2013 | 2 (3 pgs) | Meeting of Creditors with 341(a) meeting to be held on 04/23/2013 at 08:00 AM at RM 101, 3801 University Ave., Riverside, CA 92501. Confirmation hearing to be held on 04/23/2013 at 01:30 PM at Crtrm 304, 3420 Twelfth St., Riverside, CA 92501. Proof of Claim due by 07/22/2013. (Pinones, Maria) (Entered: 03/12/2013) |
| 03/12/2013 | 3 | Statement of Social Security Number(s) Form B21 Filed by Debtor Michael Eugene Moore . (Pinones, Maria) (Entered: 03/12/2013) |
| 03/12/2013 | 4 (2 pgs) | Exhibit D Filed by Debtor Michael Eugene Moore . (Pinones, Maria) (Entered: 03/12/2013) |
| 03/12/2013 | | Receipt of Chapter 13 Filing Fee - $281.00 by 18. Receipt Number 60106505. (admin) (Entered: 03/13/2013) |
| 03/14/2013 | 5 (5 pgs) | BNC Certificate of Notice (RE: related document(s)2 Meeting (AutoAssign Chapter 13)) No. of Notices: 5. Notice Date 03/14/2013. (Admin.) (Entered: 03/14/2013) |
| 03/14/2013 | 6 (3 pgs) | BNC Certificate of Notice (RE: related document(s)1 Voluntary Petition (Chapter 13) filed by Debtor Michael Eugene Moore) No. of Notices: 1. Notice Date 03/14/2013. (Admin.) (Entered: 03/14/2013) |
| 03/14/2013 | 7 (3 pgs) | BNC Certificate of Notice (RE: related document(s)1 Voluntary Petition (Chapter 13) filed by Debtor Michael Eugene Moore) No. of Notices: 1. Notice Date 03/14/2013. (Admin.) (Entered: 03/14/2013) |
| | 8 (1 pg) | RENOTICE Confirmation Hearing (BNC) Last day to Object to Confirmation 4/24/2013. Confirmation hearing to be held on 4/24/2013 at 01:30 PM at Crtrm 304, 3420 Twelfth St., Riverside, CA 92501. The case judge is Deborah J. Saltzman (Jeanmarie, |

| 03/22/2013 | | Cynthia) (Entered: 03/22/2013) |
|---|---|---|
| 03/24/2013 | 9<br>(3 pgs) | BNC Certificate of Notice (RE: related document(s)8 RENOTICE Confirmation Hearing (BNC)) No. of Notices: 4. Notice Date 03/24/2013. (Admin.) (Entered: 03/24/2013) |
| 03/26/2013 | 10<br>(2 pgs) | Statement Filed by Trustee Rod (DS) Danielson (TR). (Danielson (TR), Rod (DS)) (Entered: 03/26/2013) |
| 03/29/2013 | 11<br>(1 pg) | Request for courtesy Notice of Electronic Filing (NEF) Filed by Bissell, Jared. (Bissell, Jared) (Entered: 03/29/2013) |
| 04/01/2013 | 12<br>(1 pg) | ORDER and notice of dismissal for failure to file schedules, statements, and/or plan - **Debtor** Dismissed. (BNC) Signed on 4/1/2013. (Dela Torre, Rudy) (Entered: 04/01/2013) |
| 04/03/2013 | 13<br>(3 pgs) | BNC Certificate of Notice (RE: related document(s) 12 ORDER and notice of dismissal for failure to file schedules, statements, and/or plan (Option A or Option B) (BNC) No. of Notices: 5. Notice Date 04/03/2013. (Admin.) (Entered: 04/03/2013) |
| 04/08/2013 | 14 | Hearing Set (RE: related document(s)1 Voluntary Petition (Chapter 13) filed by Debtor Michael Eugene Moore) Confirmation hearing to be held on 4/24/2013 at 01:30 PM at Crtrm 304, 3420 Twelfth St., Riverside, CA 92501. The case judge is Deborah J. Saltzman (Jeanmarie, Cynthia) (Entered: 04/08/2013) |
| 04/15/2013 | 15<br>(3 pgs) | Notice of Intent to File Trustees Final Report and Account - Chapter 13 Dismissed/Converted . (Danielson (TR), Rod (DS)) (Entered: 04/15/2013) |
| 05/20/2013 | 16<br>(3 pgs) | Chapter 13 Trustee's Final Report and Account Filed by Trustee Rod (DS) Danielson (TR). (Danielson (TR), Rod (DS)) (Entered: 05/20/2013) |
| 05/20/2013 | 17<br>(1 pg) | Declaration re: non-receipt of obj to trustee's final report (Dismissed/Converted Chapter 13 Cases) Filed by Trustee Rod (DS) Danielson (TR). (Danielson (TR), Rod (DS)) (Entered: 05/20/2013) |
| | 18<br>(1 pg) | Proof of service Filed by Trustee Rod (DS) Danielson (TR). (Danielson (TR), Rod (DS)) (Entered: |

| 05/20/2013 | | 05/20/2013) |
| 05/20/2013 | <u>19</u><br>(1 pg) | ORDER discharging chapter 13 panel trustee and exonerate bond liability Signed on 5/20/2013. (Mason, Shari) (Entered: 05/21/2013) |
| 05/21/2013 | 20 | Bankruptcy Case Closed - DISMISSED. An Order dismissing this case was entered and notice was provided to parties in interest. Since it appears that no further matters are required and that this case remain open, or that the jurisdiction of this Court continue, it is ordered that the Trustee is discharged, bond is exonerated, and the case is closed. (RE: related document(s)<u>1</u> Voluntary Petition (Chapter 13) filed by Debtor Michael Eugene Moore, <u>2</u> Meeting (AutoAssign Chapter 13)) (Mason, Shari) (Entered: 05/21/2013) |

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 08/05/2013 09:40:36 | | |
| **PACER Login:** | gm0080 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 6:13-bk-14370-DS Fil or Ent: filed To: 8/5/2013 Doc From: 0 Doc To: 99999999 Term: included Format: html Page counts for documents: included |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

Exhibit 7



AMERICA'S SERVICING COMPANY
Return Mail Operations
P.O. Box 10388
Des Moines, IA 50306-0388

LOAN MODIFICATION AGREEMENT
LOAN NUMBER: 106 █████████
PROPERTY ADDRESS 2127 Riviera Dr
                 Blythe CA 92225

THIS LOAN MODIFICATION AGREEMENT ("Agreement"), made on
July 07, 2010, by and between Kenneth Flanagan and
                              and (the "Borrower(s)") and
America's Servicing Company (the "Lender",
And Mortgage Electronic Registration Systems, Inc. (Mortgagee)
togehter with the Borrower(s), the "Parties").

### WITNESSETH

WHEREAS, Borrower has requested and Lender has agreed, subject to the
following terms and conditions, to a loan modification as follows:
NOW THEREFORE, in consideration of the covenants hereinafter set forth
and for other good and valuable consideration, the receipt and
sufficiency of which are hereby acknowledged by the Parties, it is agreed
as follows (notwithstanding anything to the contrary in the Note and
Security Instrument dated 03/29/2006.)
1.  BALANCE. As of July 07, 2010, the amount payable under the Note
and Security Instrument (the "Unpaid Principal Balance") is U.S.
$ 251,900.00.
2.  EXTENSION. This Agreement hereby modifies the following terms of the
Note and Security Instrument described herein above as follows:
A. The current contractual due date has been extended from 02-01-09
to 09/01/2010. The first modified contractual due date is on
09/01/2010.
B. The maturity date has been extended from 05-36 (month/year) to
08/01/2050.
C. The amount of interest to be included (capitalized) will be U.S.
$ 27,918.98.
The amount of the Escrow Advance to be capitalized will be U.S. $11,442.03.
The amount of Recoverable Expenses* to be capitalized will be
U.S. $2,647.43.
The modified Unpaid Principal Balance is U.S. $ 293,908.44.
* Recoverable Expenses may include, but are not limited to: Title,
Attorney fees/costs, BPO/Appraisal, and/or Property Preservation/
Property Inspections

D. The Borrower(s) promises to pay the Unpaid Principal Balance plus
interest, to the order of the Lender. Interest will be charged on the
Unpaid Principal Balance of U.S. $ 293,908.44. The Borrower(s) promises
to make monthly payments of principal and interest of U.S. $ 1,228.36,
at a yearly rate of 4.000%, not including any escrow deposit, if
applicable. If on the maturity date the Borrower(s) still owes an amount
under the Note and Security Instrument, as amended by this Agreement,
Borrower(s) will pay this amount in full on the maturity date.

LM521/M8L/1

Exhibit 8

3.   NOTE AND SECURITY INSTRUMENT. Nothing in this Agreement shall be understood or construed to be a satisfaction or release, in whole or in part of the Borrower's obligations under the Note or Security Instrument. Further, except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Lender will be bound by, and shall comply with, all of the terms and provisions thereof, as amended by this Agreement.

4.   The undersigned Borrower(s) acknowledge receipt and acceptance of the Loan Modification Settlement Statement. Borrower(s) agree with the information disclosed in and understand that I/we am/are responsible for payment of any outstanding balances outlined in the Loan Modification Settlement.

5.   The undersigned Borrower(s) acknowledge receipt and acceptance of the Borrower Acknowledgements, Agreements, and Disclosures Document (BAAD).

6.   If included, the undersigned Borrower(s) acknowledge receipt and acceptance of the Truth in Lending statement.

7.   If included, the undersigned Borrower(s) acknowledge receipt and acceptance of the Special Flood Hazard Area (SFHA).

8.   That (he/she/they) (is/are) the Borrower(s) on the above-referenced Mortgage Loan serviced by America's Servicing Company.

That (he/she/they) have experienced a financial hardship or change in financial circumstances since the origination of (his/her/their) Mortgage Loan.

That (he/she/they) did not intentionally or purposefully default on the Mortgage Loan in order to obtain a loan modification.

LM521/M8L/2

033

Exhibit 8

**ASC**

AMERICA'S SERVICING COMPANY
Return Mail Operations
P.O. Box 10388
Des Moines, IA 50306-0388

CORRECTION AGREEMENT. The undersigned borrower(s), for and in consideration of the approval, closing and funding of this Modification, hereby grants America's Servicing Company, as lender, limited power of attorney to correct and/or initial all typographical or clerical errors discovered in the Modification Agreement required to be signed. In the event this limited power of attorney is exercised, the undersigned will be notified and receive a copy of the document executed or initialed on their behalf. This provision may not be used to modify the interest rate, modify the term, modify the outstanding principal balance or modify the undersigned's monthly principal and interest payments as modified by this agreement. Any of these specified charges must be executed directly by the undersigned. This limited power of attorney shall automatically terminate in 120 days from the closing of the undersigned's Modification. _____ (_____ initial)

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as the date first above written.

By signing this Agreement I hereby consent to being contacted concerning this loan at any cellular or mobile telephone number I may have. This includes text messages and telephone calls including the use of automated dialing systems to contact my cellular or mobile telephone. You will not be billed by your cellular or mobile carrier for any text messages you may receive from us, however, any calls we place to your cellular or mobile phone will incur normal airtime charges assessed by your mobile carrier.

Dated as of this 9th day of July, 20 10

_Kenneth Flanagan_
Kenneth Flanagan
Signature

_Dorothy M Manuel_
Signature Witness/Notary
Public

SIGN & DATE

_____          _____
Signature                           Signature

_Halimo Y. Adem   07/15/10_
America's Servicing Company
Halimo Y. Adem
VP of Loan Documentation
Mortgage Electronic Registration Systems, Inc.

Name: _____

Its: _____
LM527/M8L/3

DOROTHY M. MANUEL
Commission # 1729536
Notary Public - California
Los Angeles County
My Comm. Expires Apr 5, 2011

_Dorothy M Manuel_
July 9th 2010

Los Angeles County
Exp. April 5, 2011

Exhibit 8

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of _Los Angeles_    }

On _July 9th 2010_ before me, _Dorothy M. Manuel Notary Public_
   Date                               Name and Title of Officer (e.g., "Jane Doe, Notary Public")

personally appeared _Kenneth Flanagan_
                                       Name(s) of Signer(s)

☐ personally known to me

☒ (or proved to me on the basis of satisfactory evidence)

to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

**DOROTHY M. MANUEL**
Commission # 1729538
Notary Public - California
Los Angeles County
My Comm. Expires Apr 5, 2011

Place Notary Seal Above

Signature _Dorothy M. Manuel_
                                Signature of Notary Public

───────────── **OPTIONAL** ─────────────

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**
Title or Type of Document: _Loan Modification_

Document Date: _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

Exhibit 8